IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY SCOTT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DETECTIVE WILLIAM J. FARRELL, | : | |
| et al. | : | NO. 12-6049 |

## MEMORANDUM OF DECISION

THOMAS J. RUETER                                    December 10, 2013
United States Magistrate Judge

        Presently before the court is defendants' Motion for Summary Judgment (Doc.

19), and plaintiff's opposition thereto (Doc. 20). For the reasons that follow, defendants' Motion

for Summary Judgment is **GRANTED**.

## I.     BACKGROUND

        This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff's suit

arises from his arrest for two armed robberies of the Caprice Villa Bar and a Wine and Spirits

store located in Philadelphia, Pennsylvania. After completion of discovery, plaintiff has whittled

down his claims to two: federal malicious prosecution under 42 U.S.C. § 1983, and the state law

tort claim of malicious prosecution. See Stipulations (Docs. 15 and 16).

        The undisputed facts show that on June 16, 2009, two black males entered the

Caprice Villa Bar, located at 5000 Market Street, Philadelphia, Pennsylvania, and, at gunpoint,

robbed the bar and individual patrons of various amounts of money. (Farrell Decl. ¶ 3 (Motion

Ex. B).) On June 17, 2009, two black males entered the Wine and Spirits store, located at 4600

Lancaster Avenue, Philadelphia, Pennsylvania, and, at gunpoint, took money from the store

register. Id. ¶ 4.

Philadelphia Police Detectives William P. Farrell and David J. Tighe, were assigned to investigate these two robberies.[1]  Id. ¶ 5.  During the course of the investigation, Detective Farrell received information from his supervisor that plaintiff, Timothy Scott, was one of the two individuals who committed the robberies.  Id. ¶ 6.  The tip identifying plaintiff was received by his supervisor from another law enforcement agency.  Id.

After receiving the tip, Detective Farrell retrieved the most recent arrest photograph of plaintiff that was available from police files, and he determined that plaintiff matched the physical description given by witnesses of one of the males present at both robberies.  Id. ¶ 7.  Detective Farrell then created a photo array, which included plaintiff's recent arrest photograph, along with seven photographs of other individuals.  Id. ¶ 8.  Detectives Farrell and Tighe then showed the photo array to the owner of the Caprice Villa Bar, and to several individuals present during the Wine and Spirits store robbery.  Id. ¶ 9.  Both the owner of the bar and at least one of the individuals present during the Wine and Spirits store robbery identified plaintiff as one of the individuals who robbed those establishments.  Id. ¶¶ 10-11.

Based on these positive identifications of plaintiff, Detective Farrell concluded that probable cause existed to arrest plaintiff.  Id. ¶ 12.  Plaintiff was arrested and a Philadelphia Police Department Arrest Report ("PARS") was created (Motion Ex. A), which contained the information Detectives Farrell and Tighe developed during the course of their investigation.  Id.

---

[1]     In addition to Detectives Farrell and Tighe, plaintiff also named as defendants the following members of the Philadelphia Police Department: Daniel J. Butler, Park Deayoung, Timothy McCool, John Walker and Daniel Brooks.  It is undisputed that Detectives Farrell and Tighe were the principal investigators and made the determination that there was probable cause to arrest plaintiff.  Plaintiff has produced no evidence to suggest that the remaining defendants participated in the decision to arrest plaintiff, or otherwise to prosecute him.  Accordingly, summary judgment will be entered in favor of all defendants and against plaintiff.

The PARS was sent to the Philadelphia District Attorney's Office, which made the decision to formally charge plaintiff with multiple felony and misdemeanor counts.  Id. ¶ 14.  Once the District Attorney made the decision to formally charge plaintiff, neither Detective Farrell nor Detective Tighe was involved in the decision to continue to prosecute plaintiff.  Id. ¶ 15.

The District Attorney charged petitioner with aggravated assault, robbery with intent to inflict serious bodily injury, criminal conspiracy – aggravated assault, possessing firearms without a license, theft by unlawful taking, receiving stolen property, carrying firearms in public, possession of an instrument of crime, possession of an offensive weapon, terroristic threats, simple assault, and recklessly endangering another person.  (State Court Docket at 11 (Motion Ex. D).)  On July 24, 2009, a preliminary hearing was held before Municipal Court Judge Frank T. Brady, who found probable cause for all the charges and held plaintiff over for trial.  Id.

Plaintiff alleges that because bail was set "prohibitively high," he remained incarcerated from June 23, 2009 through October 22, 2010.  (Opp'n ¶¶ 19, 21.)  Plaintiff further states that the Philadelphia District Attorney's Office withdrew all the charges "on the advice of the defendants."  Id. ¶ 20.

## II.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is material when "it might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).  To defeat summary judgment, the party opposing the motion cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim, Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982), but must go beyond the pleadings and present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c).  See Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).  See also Matsushita, 475 U.S. at 587-88 (same).

**III.    DISCUSSION**

        In order to prove that defendants maliciously prosecuted him, plaintiff must produce evidence that: (1) defendants initiated criminal proceedings; (2) the criminal proceedings ended in plaintiff's favor; (3) the proceedings were initiated without probable cause; (4) defendants acted maliciously or for a purpose other than bringing plaintiff to justice; and (5) plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceedings.  DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005). To overcome defendants' motion for summary judgment, plaintiff must proffer sufficient evidence to create a triable issue of fact as to all the above elements; otherwise the malicious prosecution claim will fail as a matter of law.  Domenech v. City of Philadelphia, 2009 WL

4

1109316, at *9 (E.D. Pa. April 23, 2009), aff'd, 373 F.App'x 254 (3d Cir. 2010). See also

Cosmas v. Bloomingdales Bros., Inc., 660 A.2d 83, 85 (Pa. Super. Ct. 1995) (to make out

successful state law claim of malicious prosecution, plaintiff must show that defendants

instituted proceedings without probable cause, with malice, and that the proceedings were

terminated in favor of the plaintiff). The court finds that the undisputed facts demonstrate

defendants had probable cause to arrest plaintiff for the two robberies. Therefore, plaintiff

cannot show that defendants maliciously prosecuted him, and the Motion must be granted.[2]

In a malicious prosecution context, a showing of probable cause requires "proof of

facts and circumstances that would convince a reasonable, honest individual that the suspected

person is guilty of a criminal offense." Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993).

"While the existence of probable cause is generally a jury question, it may be appropriate for

summary judgment where the uncontroverted facts could not lead a reasonable person to find that

probable cause was lacking." Gatter v. Zappile, 67 F.Supp. 2d 515, 519 (E.D. Pa. 1999)

(quotation omitted), aff'd, 225 F.3d 648 (3d Cir. 2000). See also Merkle v. Upper Dublin Sch.

Dist., 211 F.3d 782, 789-90 (3d Cir. 2000) (holding that a court may find probable cause exists as

a matter of law "if the evidence, viewable most favorably to plaintiff, reasonably would not

support a contrary factual finding").

It is well established that an identification from a single, credible witness can be

sufficient for probable cause:

---

[2]     In light of this ruling, the court will not address the remaining elements of the
malicious prosecution claim or defendants' argument that they are entitled to qualified immunity
for their actions.

5

> The identification of a party as the perpetrator of a crime by a victim or other witness provides ample probable cause to charge that party.  See Tangwell v. Studkey, 135 F.3d 510, 516 (7th Cir. 1998); Sharrar v. Felsing, 128 F.3d 810, 818-19 (3d Cir. 1997); Brodnicki v. City of Omaha, 75 F.3d 1261, 1264-65 (8th Cir.), cert. denied, 519 U.S. 867, 117 S.Ct. 179, 136 L.Ed.2d 119 (1996); Pravda v. City of Albany, 956 F.Supp. 174, 184-85 (N.D. N.Y. 1997).  Indeed, the identification by a victim or other witness of a party as the perpetrator of a crime is "sufficient to support a conviction 'beyond a reasonable doubt.'"  Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 440 (7th Cir. 1986).

Petaccio v. Davis, 2002 WL 32356393, at *4 (E.D. Pa. Oct. 9, 2002), aff'd, 76 F.App'x 442 (3d Cir. 2003).  There is no requirement that the police, once they receive the eyewitness identification, conduct further investigation or put contradictory evidence in the affidavit supporting probable cause for arrest.  According to the Third Circuit, a police officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed."  Merkle, 211 F.3d at 790 n.8.  The Seventh Circuit Court of Appeals also reached the same conclusion and explained:

> The Supreme Court has not spoken on the question, but the formulae for probable cause, such as "a probability or substantial chance of criminal activity, not an actual showing of such activity," Gates, 462 U.S. at 244 n.13, 103 S.Ct. at 2335, quoted in New York v. P.J. Video, Inc., 475 U.S. 868, 106 S.Ct. 1610, 1616, 89 L.Ed.2d 871 (1986), or "facts and circumstances known to the officer [that] warrant a prudent man in believing that an offense has been committed," Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959), do not suggest that an officer risks his career and his fortune by believing an apparently sober eyewitness to a crime.  A "prudent" officer may balk if the person claiming to be an eyewitness strolls into the police station and describes a crime from long ago, or if the person leveling the accusation is babbling or inconsistent.  When an officer has "received his information from some person – normally the putative victim or an eye witness – who it seems reasonable to believe is telling the truth," Daniels v. United States, 393 F.2d 359, 361 (D.C. Cir. 1968), he has probable cause.  Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters.  For example, McKinney v. George, 726 F.2d 1183 (7th Cir. 1984), held that a witness's complaint established probable cause as a matter of law, making a trial unnecessary.  As the Eighth Circuit remarked in finding probable cause despite an

6

officer's failure to conduct an investigation (even to look at the bill said to be counterfeit): "There is no constitutional or statutory requirement that before an arrest can be made the police must conduct a trial." Morrison v. United States, 491 F.2d 344, 346 (8th Cir. 1974). "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). See also 1 Wayne R. LaFave, Search and Seizure, § 3.2 (1978).

. . . .

Some parallel rules suggest that one reliable eyewitness is enough. Even before Gates, a single tipster could supply probable cause to issue a search or arrest warrant, if the police had reason to think that the informant had firsthand knowledge and was reliable. See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); both overruled (in favor of a lower standard of probable cause) by Gates. The opinions in Aguilar and Spinelli take it as a point of departure that the report of one identified, reliable eyewitness creates probable cause. The Court has never suggested that the police, with such information in hand, must conduct a further investigation or put contradictory evidence into the affidavit. Cf. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), holding that if an affidavit is sufficient on its face the defendant may not try to undercut the finding of probable cause by introducing other facts that the police left out, indeed that he may not even controvert the facts in the affidavit, unless he first shows that the author of the affidavit knew them to be untrue and that without these facts the affidavit would not establish probable cause.

Just a single eyewitness's statement – without further investigation or a narration of contrary evidence – can support a warrant, so a single eyewitnesses' statement can support an indictment and a conviction.

Gramenos v. Jewel Cos., Inc., 797 F.2d 432, 439-40 (7th Cir. 1986) (Easterbrook, J.), cert.

denied, 481 U.S. 1028 (1987).

A.   **Identification Made During The June 16, 2009 Robbery**

At the preliminary hearing, the Commonwealth presented the testimony of Marcia Williamson, who was a bartender at the Caprice Villa Bar. At the hearing, she unequivocally identified plaintiff as one of the persons who robbed the bar. (N.T., 7/24/09, at 8.) She had

7

previously identified plaintiff in a line up.  Id. at 23.  Particularly, she stated plaintiff came in

with an "uzi" firearm in his hand and demanded all the money in the cash register.  She said

plaintiff had part of his face covered with a scarf, covering a portion of his face, nose to chin and

from ear to ear.  Id. at 22.  She gave plaintiff the contents of the cash register and then plaintiff

proceeded to demand money from the patrons of the bar.  Plaintiff stole money from four

patrons.  Id. at 13.  Ms. Williamson said she was approximately two feet away from plaintiff.

The only time she took her eyes off him was "to open up the register to give him the tray."  Id. at

26, 29.

### B.     Identification Made During The July 17, 2009 Robbery

       The various employees and patrons who were in the Wine and Spirits store on

July 17, 2009, described the two robbers as young black males.  One was tall, about six feet, one-

inch and had dark skin; the other was short, about five feet, five to eight inches and light skinned,

with blemishes or bad acne.  Both wore dark hoodie sweatshirts, and wore black, knitted type

masks.  Both robbers fled on dark colored mountain bikes.  See Statements of Denise Wilson,

James Fowler, Rosalind Simpson, Keith Gilbert, James Wood and India Knight (attached to Pl.'s

Opp'n).

       Denise Wilson positively identified plaintiff as one of the two persons who robbed

the Wine and Spirits store.  She was operating one of the cash registers and had interaction with

the robbers as they demanded the money from the register.  The police detective showed Ms.

Wilson a photo array containing photographs of eight black males.  See Wilson Statement (Pl.'s

Opp'n).  Ms. Wilson identified plaintiff as the shorter of the two males who robbed the store and

had attempted to open the register.  When asked by the police how she could identify plaintiff as

the person who robbed the store, Ms. Wilson explained:

> First from his eyes, but before the robbery occurred I saw both guys on bikes at the corner of Market [Street].  I walked past both guys about ten (10) minutes prior to the robbery.  I went [and] got cigarettes for her (manager) at the gas station.

(Wilson Statement.)

The police also interviewed Darlene McCauley, who knew plaintiff as "Timothy" from the neighborhood.  McCauley told police that she observed plaintiff riding a dark mountain bike, with another individual on a bike, "right after the robbery" and nearby the store.  Both plaintiff and the other man were wearing "dark hoodies."  She described the other man as being taller than plaintiff and dark skinned.  She identified plaintiff's photograph from the photo array shown to Denise Wilson.

Plaintiff has made no showing that the identifications of plaintiff by the two victims were "falsified, dishonest, biased or prejudicial" or that the eyewitness' descriptions of the shorter robber were inconsistent with plaintiff's appearance.  See Petaccio v. Davis, 76 F.App'x 442, 445-46 (3d Cir. 2003) (suggesting that such a showing is needed to challenge probable cause based on victim's identification).  A surveillance video was available only for the robbery of the Wine and Spirits store.  The court has carefully viewed the still shots from the surveillance video.  While they are of very poor quality, they do not contradict the identification made by Denise Wilson of plaintiff.

Plaintiff solely relies upon the fact that the robbers were masked to cast doubt upon the reliability of the eyewitness' identifications.  (Pl.'s Opp'n ¶¶ 4-12.)  However, it was reasonable for the police to conclude that the identifications were reliable.  With respect to the

robbery of the Caprice Villa Bar, Marcia Williamson testified that the mask covered only a part of plaintiff's face, from his nose to his chin.  Ms. Williamson was only two feet away from plaintiff and never took her eyes off of him, except to open the cash register.  The description of the shorter robber matched physical characteristics of plaintiff (Farrell Decl. ¶ 7).  With respect to the robbery of the Wine and Spirits store, Denise Wilson had an opportunity to view plaintiff prior to the robbery when she observed him outside the store ten minutes before the robbery.  Furthermore, Ms. Wilson was very close to plaintiff when he demanded money from her cash register and was able to observe his eyes through the mask.  The fact that plaintiff may have been wearing a black wool mask over his head at the time of the robbery does not preclude the police from finding probable cause based on the identification made by Ms. Wilson, and the identification of plaintiff made by Darlene McCauley who saw plaintiff after the robbery near the liquor store on a bike dressed in a dark hoodie along with another man on a bike who also wore a dark hoodie.

In <u>Lynn v. Christner</u>, 184 F.App'x 180 (3d Cir. 2006), the Third Circuit upheld the dismissal of a false arrest case, where the plaintiff/robber had been identified by the victim, notwithstanding the fact that the plaintiff was wearing a "dark mask covering everything but his eyes and a small amount of the front of his hair," at the time of the attack.  <u>Id.</u> at 184.  The court noted that the witnesses stated that the plaintiff had the "same build and height, and had the same hair and eyes and the same distinctive voice, as the robber."  <u>Id.</u>  The court stated the following: "The defendants were not required to undertake an exhaustive investigation in order to validate the probable cause that already existed in the officers' minds.  Viewing the facts most favorably to Lynn, [the eye witness'] credible identification of him as the person who robbed her was

sufficient to establish probable cause to arrest him." Id.  See also Gov't of Virgin Islands v. Pereira, 302 F.App'x 72, 76 (3d Cir. 2008) (victim's testimony identifying defendant who wore stocking mask during account was sufficient to support conviction).  As in Lynn, the victims' identifications in this case were based on their observation of parts of plaintiff's face.  The bartender at the tavern observed half of plaintiff's face at close range for an extended period of time.  In the case of Denise Wilson, the liquor store clerk, she identified plaintiff's eyes.  She also had the opportunity to view him ten minutes before the robbery while he waited outside the store when he was not disguised.  See United States v. Webb, 2010 WL 4814695, at *4-*5 (E.D. Pa. Nov. 26, 2010) (masked bank robber identified when his masked slipped briefly and victim saw his face), aff'd, 499 F.App'x 210 (3d Cir. 2010), cert. denied, 133 S.Ct. 1475 (2013); Commonwealth v. Smith, 423 A.2d 1296, 1299 (Pa. Super. Ct. 1981) (where robbers wore ski masks and facial identification could not be made, witness could nonetheless identify defendant based on factors such as size, height, weight, hair, clothing, body build, color, location and mannerisms).  Furthermore, Ms. Wilson's identification was corroborated by the testimony of Darlene McCauley and by the physical description of the robber given by the other eyewitnesses, which matched plaintiff's physical characteristics.  See Draper v. United States, 358 U.S. 307, 309-10 (1959) (probable cause established where informant's description of physical attributes of suspect corroborated by observation by agent).

## IV.   CONCLUSION

For all the above reasons, the court concludes that no reasonable juror could find that the police officers lacked probable cause to arrest plaintiff for the two robberies.  Therefore,

the court will enter summary judgment in favor of all defendants and against plaintiff.

An appropriate order follows.

BY THE COURT:


/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY SCOTT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DETECTIVE WILLIAM J. FARRELL, | : | |
| et al. | : | NO. 12-6049 |

## **ORDER**

AND NOW, this 10th day of December, 2013, upon consideration of defendants' Motion For Summary Judgment (Doc. 19), and plaintiff's opposition thereto (Doc. 20), it is hereby

## **ORDERED**

that defendants' Motion For Summary Judgment (Doc. 19) is **GRANTED** for the reasons set forth in the Memorandum of Decision filed this day.

BY THE COURT:


/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge